UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CYNTHIA LOTZ,

                         Plaintiff,

   -against-                                 1:07-CV-1282
                                                  (LEK/DRH)

CHARLES CROSBY & SON, INC. D/B/A,
MERLIN DEVELOPMENT CORPORATION,

                         Defendant-Counterclaim Plaintiff,
   -against-

BRUCE LEVINSKY

                         Intervenor-Counterclaim Plaintiff.

---

**MEMORANDUM-DECISION AND ORDER**

     The instant action arises out of two contracts that Plaintiff Cynthia Lotz ("Plaintiff" or "Lotz") allegedly entered into with Defendant Charles Crosby & Son, Inc. d/b/a Merlin Development Corporation ("Merlin" or "Defendant") and Intervenor-Defendant Bruce Levinsky ("Intervenor" or "Levinsky"), respectively. See generally Complaint (Dkt. No. 1); Answer (Dkt. No. 7); Answer and Counterclaim of Defendant-Intervenor (Dkt. No. 16). Presently before this Court is Plaintiff's partial Motion for summary judgment. Dkt. No. 30.

**I.    BACKGROUND**

     Levinsky resides in Saratoga Springs, New York and is the president and sole owner of Merlin, a corporation with its principal place of business in Saratoga Springs, New York. Lotz Aff. ¶ 6 (Dkt. No. 30). Lotz currently resides in Florida; however, throughout the 1990s Lotz lived in the

1

Albany area where she worked in the field of commercial real estate. Id. ¶¶ 8-12. While living and working in the Capital District, Lotz began a romantic relationship with Levinsky. Id. ¶ 13. In 1999, Lotz left the Capital District to take a job as a Managing Director and Senior Vice President at Grubb and Ellis in Melville, New York. Id. ¶ 10. She and Levinsky continued to maintain a long-distance relationship and discussed the possibility of Lotz terminating her employment at Grubb and Ellis in order to move back to the Capital District and live with Levinsky. Id. ¶¶ 13, 15, 17.

According to Lotz, she obtained adequate business assurances to prompt her to leave her job at Grubb and Ellis when she and Levinsky discussed a business agreement which formed the basis for the Consulting Agreement ("Consulting Agreement"), the first contract in dispute. Id. ¶ 18. In early 2001, she left her job at Grubb and Ellis and returned to Saratoga Springs to live with Levinsky. Id. ¶¶ 18-19. Levinsky contends that he made no such verbal agreement with Lotz to enter into the Consulting Agreement on behalf of Merlin which would have prompted her to leave her prior employment. Levinsky Aff. ¶ 4 (Dkt. No. 32). Instead, Levinsky maintains that Lotz was determined to live with Levinsky in Saratoga and this is what ultimately prompted her to leave her job at Grubb and Ellis. Id. The legitimacy and enforceability of the Consulting Agreement is disputed in this action.

Lotz proffers that on January 2, 2003, she and Merlin fully executed a three-year Consulting Agreement whereby Lotz would be compensated one hundred thousand dollars ($100,000) per year for advice, management, support, and general consultation to Merlin in connection with the leasing and acquisition of commercial real estate. Lotz Aff. ¶ 3 & Ex. A. According to Lotz, she provided services and general consultation to Merlin on at least thirteen (13) projects and acted as a liaison on behalf of Merlin with over fifty (50) individuals. Lotz Aff. ¶ 38; Ex. J, Response #6. In contrast,

Levinsky reports that in 2001 Lotz became interested in purchasing a condominium the couple had rented in Florida and requested that Levinsky sign a Consulting Agreement she drafted to demonstrate employment and ultimately enhance her credit and obtain a mortgage. Levinsky Aff. ¶ 6. According to Levinsky, however, the Consulting Agreement was a "sham," as its purpose was not related to employment at Merlin but rather to aid Lotz in the mortgage approval process. Id. ¶¶ 11, 31. Levinsky contends that Lotz never performed pursuant to the Consulting Agreement nor did she ever make a demand for any money under the Consulting Agreement prior to this lawsuit. Id. ¶¶ 18-19. Lotz never received any money payments from Merlin pursuant to the Consulting Agreement. Lotz Aff. ¶¶ 32-35.

In May 2005, Lotz and Levinsky ended their romantic relationship. Id. ¶ 42. As the parties had been living together for a significant period of time, they had intertwined personal affairs that needed to be resolved. See generally id. ¶¶ 61-71. The parties wished to divide ownership of the personal property contained within the apartment they shared, the gifts they had received as a couple, as well as the two properties they co-owned in New York and Florida. Id. ¶ 61. Both parties agree that on May 19, 2005, Plaintiff and Intervenor executed the second contract in dispute (the "Accord") in order to settle their outstanding personal issues. Sabo Aff., Ex. I (Dkt. No. 30); Lotz Aff. ¶ 61-71; Answer and Counterclaim of Defendant-Intervenor ¶ 22. Lotz accepted all the benefits of the Accord. Answer and Counterclaim of Defendant-Intervenor ¶ 16; Plaintiff's Answer to Counterclaim of Defendant-Intervenor ¶ 4 (Dkt. No. 22).

Plaintiff filed her Complaint in this matter on December 10, 2007, alleging breach of contract against Defendant Merlin in regard to the Consulting Agreement. See generally Complaint. Plaintiff contends that she and Defendant executed a binding contract, she fully performed pursuant

to the contract, and Defendant breached the Consulting Agreement by failing to make payments to Plaintiff as provided for in the Consulting Agreement. Id. ¶¶ 20-24. On February 11, 2008, Defendant filed its Answer denying that the Consulting Agreement was an enforceable contract and counterclaimed for breach of contract as to the Accord. Def. Answer ¶¶ 22-23. Specifically, Defendant's counterclaim is based on the theory that the Accord was intended to resolve all outstanding claims between Lotz and Levinsky and insofar as Levinsky is the sole shareholder of Merlin, the Accord was intended for the immediate benefit of Defendant. Id. Defendant therefore claims that Plaintiff breached the Accord by suing for performance of the Consulting Agreement. Id. Levinsky, Defendant's sole shareholder and principal, intervened in this action and counterclaimed on June 30, 2008 alleging *inter alia* breach of the Accord. See generally Answer and Counterclaim of Defendant-Intervenor ¶¶ 23-25.

On February 17, 2009, Plaintiff filed the Motion for summary judgment that is presently before this Court. Motion (Dkt. No. 30). Defendant and Intervenor filed their Memorandum of law in opposition to Plaintiff's Motion for summary judgment on March 3, 2009. Dkt. No. 32. Plaintiff subsequently filed her reply. Dkt. No. 33.

**II.   STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Thus the inquiry becomes whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The court is required to

"resolve all ambiguities, and credit all factual inferences that could be rationally drawn, in favor of the party opposing summary judgment." Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001); Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001).

Once the moving party has met its initial burden, the non-moving party may preclude summary judgment by "com[ing] forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 252. In order to survive a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). The non-moving party may survive the motion for summary judgment "by coming forward with evidence that would be sufficient . . . to establish the existence of [an] element at trial." Grain Traders Inc. v. Citibank, N.A., 160 F.3d 97, 100 (2d Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

A motion for summary judgment in a breach of contract claim may be granted only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning. Compagnie Financiere de CIC et de L'Union Europeenne v. Merill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 157-58 (2d Cir. 2000). "An ambiguity exists where the terms of [the agreement] could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) (quoting Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000)); see Schwabenbauer v. Bd. of Educ. of Olean, 667 F.2d 305, 313 (2d Cir. 1981). If the contract is unambiguous, courts must interpret the contract to give effect to its terms and "cannot and should

not accept an interpretation that ignores the interplay of the terms, renders certain terms 'inoperable,' and creates a conflict where one need not exist." Pearce, Urstadt, Mayer & Greer Realty Corp. v. Atrium Dev. Assocs., 77 N.Y.2d 490, 571 (N.Y. 1991) (citing Chimart Assocs. v. Paul, 66 N.Y.2d 570, 573 (N.Y. 1986)). "[O]nly where the language *and* the inferences to be drawn from it are unambiguous" may a court "construe a contract as a matter of law and grant summary judgment." Cable Sci. Corp. v. Rochdale Vill., Inc., 920 F.2d 147, 151 (2d Cir. 1990) (citing American Home Assurance Co. v. Baltimore Gas & Elec. Co., 845 F.2d 48, 50-1 (2d Cir. 1988)).

## III.   DISCUSSION

Plaintiff concedes that Defendant produced affidavits creating questions of fact as to whether Plaintiff performed pursuant to the terms of the Consulting Agreement, thereby precluding summary judgment on Plaintiff's sole claim. Reply Memo. of Law at 1 (Dkt. No. 33). Plaintiff now seeks partial summary judgment with respect to all counterclaims made by Defendant and Intervenor (collectively "Defendants"). Id. at 9.

### A.   Third Party Beneficiary Claim[1]

To state a valid claim for breach of contract, a plaintiff must prove the following elements: (1) the existence of a contract, (2) performance, (3) breach by the other party, and (4) ensuing damages. Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000). It is well established that a third party may sue as a beneficiary on a contract that was made for his benefit. See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. 1996); Port Chester Elec. Constr. Corp. v. Atlas, 40 N.Y.2d 652, 655-66 (N.Y. 1976). A party need not be explicitly referenced in a

---

[1] This section of the Discussion addresses Defendant's sole counterclaim and Intervenor's first counterclaim. Defendant's Answer ¶¶ 22-23; Answer and Counterclaim of Defendant-Intervenor ¶¶ 24-25.

contract to be considered a third party beneficiary. In Re Gulf Oil/ Cities Serv. Tender Offer Litigation, 725 F. Supp. 712, 733 (S.D.N.Y. 1989) ("Although a third party need not be specifically mentioned in the contact before third-party beneficiary status is found, New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement"). "An intended third party beneficiary will be found when it is appropriate to recognize a right to performance in the third party and the circumstances indicate that the promisee intends to give the third party the benefit of the promised performance." Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 573 (2d Cir. 1991). Absent such an intent to benefit a third party, the benefit is merely incidental and the third party possesses no legal rights with regard to the contract. Id. (An individual's "rights as a third-party beneficiary hinge on its demonstration of [the original parties'] intent to benefit it at the time the [] agreement w[as] entered into") (citing Goodman-Marks Assocs. v. Westbury Post Assocs., 70 A.D.2d 145, 148 (2d Dep't 1979)).

Defendants claim that Plaintiff breached the Accord by bringing the present suit against Merlin seeking compensation under the Consulting Agreement. Defendants contend that Merlin is a third party beneficiary of the Accord between Intervenor and Plaintiff and therefore the Accord encompassed all claims Plaintiff had against Merlin, and Merlin has the legal right to enforce the express, as well as, implied terms of the Accord. Answer and Counterclaim of Defendant-Intervenor ¶¶ 33-35. Plaintiff denies that she breached the Accord by filing the above-captioned lawsuit. Answer to Counterclaim ¶ 23 (Dkt. No. 11 ). Lotz contends that the Accord is on its face a personal agreement between Levinsky and herself and that the Accord was exclusively designed to settle their personal affairs and resolve issues pertaining to their two joint ventures in real estate. Sabo Aff., Ex. I. To that end, Lotz maintains that Merlin was never a party to the Accord nor was

the Accord intended to benefit Merlin. Sabo Aff., Ex. I; Lotz Aff., Ex. B. Because the Accord did not resolve all issues between Plaintiff and Defendant, Plaintiff contends that the Accord does not bar her from commencing this suit to enforce the Consulting Agreement against Defendant.

In light of the surrounding circumstances and the plain language of the Accord, it is clear that Levinsky and Merlin have not sustained their burden of demonstrating that Merlin was an intended beneficiary of the Accord as a matter of law. Both Lotz and Levinsky testified that it was not their intent to benefit Merlin at the time they executed the Accord.[2]  Lotz Aff. ¶ 73; Sabo Aff. Ex. F at 54-55. Moreover, Levinsky and Lotz executed the Accord following the termination of their romantic relationship in order to settle their intertwined personal affairs. The Accord makes no reference to Lotz's employment at Merlin. The Accord consists of (1) an agreement between Lotz and Levinsky, (2) a memorandum of understanding to resolve outstanding issues regarding real

---

[2] In her Affidavit, Lotz reports that she did not believe the Accord was intended to resolve her claims against Merlin. Lotz Aff. ¶ 73. In support, she cites a letter she wrote to Levinsky in which she expressly addressed the fact that she had not yet enforced the Consulting Agreement with Merlin. Lotz Aff. ¶ 73 & Ex. B.

In his deposition, Levinsky corroborated Lotz's position that the Accord was not intended to benefit Merlin:

Q.   At the time you entered into the Accord with Ms. Lotz, did you believe that she had any potential claims against Merlin Development?
A.   No.
Q.   Did you structure the Accord in a way that contemplated she had claims against Merlin Development?
A.   No. I didn't believe that she had any claims against Merlin Development. As a matter of fact, I had no recollection of the Consulting Agreement. When I say I had no recollection of it, I didn't have the belief - One, I didn't remember it; two, I didn't have the belief that it had any exposure because there was never an intent to pay for services as it was outlined there in that Consulting Agreement.

Sabo Aff., Ex. F at 54-55.

estate jointly owned by Lotz and Levinsky, (3) the memorialization of an agreement pertaining to health insurance, (4) a document entitled Cynthia Lotz and Bruce Levinsky Personal/Community Property Distribution from 75 Woodlawn Avenue Condominium, and (5) a document encompassing purchases made by Lotz on Levinsky's credit card. Sabo Aff., Ex. I. There is no indication on the face of the agreement that the parties intended for the Accord to settle anything other than their outstanding personal issues.

In opposing Plaintiff's Motion for summary judgment, Defendants rely on the language of the Accord to demonstrate Merlin's third party beneficiary status. Specifically, Defendants point to the clause stating that "the parties wish to resolve all of the outstanding issues between them." Sabo Aff. Ex. I at 4. This language, however, is not dispositive; the testimony, surrounding circumstances, and the rest of the language in the Accord indicate that the Accord was not intended to pertain to Merlin, but rather to resolve personal issues following a breakup.

Since there is no evidence demonstrating that Lotz and Levinsky intended for the Accord to be for the immediate benefit of Merlin, this Court concludes, as a matter of law, that Merlin is not a third party beneficiary of the Accord. Accordingly, Merlin has no legal rights with regard to the Accord and Lotz is not in breach of the Accord as a result of commencing this suit for breach of the Consulting Agreement. Because the language of the Accord and all inferences drawn therefrom are clear and unambiguous, summary judgment is proper with respect to Defendants' first counterclaims. See Cable Sci. Corp. v. Rochdale Vill., Inc., 920 F.2d at 151.

### B.     Breach of Implied Terms Claims[3]

#### 1.     Implied-in-Fact Covenant

The fact that a particular provision has not been enumerated in a contract does not necessarily excuse a party from her obligation. See Rowe v. Great Atl. & Pac. Tea Co., 46 N.Y.2d 62, 69 (N.Y. 1978). A court may imply a particular covenant insofar as it is necessary for the effectuation of the purpose of a contract. M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990). Nevertheless, when interpreting contracts, courts should follow the "familiar and eminently sensible proposition of law that when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms." W.W.W. Assocs. Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (N.Y. 1990). In light of the principle of freedom of contract, "a party who asserts the existence of an implied-in-fact covenant bears a heavy burden, for it is not the function of the courts to remake the contract agreed by the parties, but rather to enforce it as it exists." Rowe, 46 N.Y.2d at 69. "[A] party making such a claim must prove not merely that it would have been better or more sensible to include such a covenant, but rather that the particular unexpressed promise sought to be enforced is in fact implicit in the agreement viewed as a whole." Id.

Levinsky contends that it is implied-in-fact that the Accord encompasses claims against Merlin and that Lotz breached this implied provision by commencing suit against Merlin. Answer and Counterclaim of Defendant-Intervenor ¶¶ 34-35. He urges the Court to deny Lotz's Motion on this counterclaim because a reasonable person would have understood that the Accord encompassed

---

[3] This section of the Discussion addresses Levinsky's Second, Fourth, and Fifth counterclaims. Answer and Counterclaim of Defendant-Intervenor ¶¶ 30-35, 39-41, 42-45.

10

claims against Merlin as well as Levinsky and because a reasonable person in the position of Lotz would have understood these claims were included. Memo. of Law in Opposition at 15. Plaintiff, however maintains that she did not understand the Accord to mean that neither party would engage in litigation involving Merlin as a result of executing the Accord. Lotz Aff. ¶ 73; Reply Memo. of Law at 6.

Viewing the evidence in the light most favorable to Levinsky, the Court finds that it is improper to imply any such covenant in the Accord. The end of Lotz and Levinsky's romantic relationship caused significant issues. It is undisputed that the Accord was executed as a result of these outstanding personal issues and that its purpose was to resolve them. Lotz Aff. ¶ 61-71; Answer and Counterclaim of Defendant-Intervenor ¶ 22. The record lacks evidence to suggest that the parties executed the Accord in order to resolve issues related to Lotz's employment at Merlin. As the covenant Levinsky seeks to imply pertains to Lotz's relationship with her employer, Merlin, and not her romantic relationship with Levinsky, the covenant is not necessary to effectuate the stated purpose of the Accord.

Levinsky's arguments in opposition to summary judgment are legally untenable, as they are merely conclusory statements that are unsubstantiated by evidence in the record. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 902 (1990) ("'conclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact"). He has not met his burden of demonstrating that there exists an implied-in-fact covenant that the Accord encompassed all claims Lotz may have against Merlin. Contrary to the statement made by Levinsky that "[he] [is] Merlin" and therefore it should be implied that the Accord encompasses all claims against Merlin, the two

are separate legal entities.[4]  Accordingly, Levinsky is not justified in believing that the Accord encompassed all claims against Merlin nor is it reasonable to conclude that Lotz knew or should have known that the Accord encompassed all claims against Merlin.  Further, it is well-settled that a party opposing summary judgment may not create a genuine issue of material fact simply by submitting an affidavit disputing his own prior testimony.  Trans-Orient Marine v. Star Trading Marine, 925 F.2d 566, 572-73 (2d Cir. 1991); Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987); Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir.1985).  Accordingly, Levinsky's assertion that he is Merlin, a statement made in direct contradiction of his prior sworn testimony, must be disregarded with respect to Plaintiff's Motion for summary judgment.  See Levinsky Aff. ¶ 31 & Sabo Aff. Ex. F at 79-80.  Levinsky largely relies on bald assertions which, without more, simply do not give rise to genuine issues of material fact and cannot defeat Plaintiff's Motion for summary judgment.

The terms of the Accord are clear and unambiguous and Levinsky has failed to sustain his burden of demonstrating the existence of an implied-in-fact covenant that the Accord encompasses all claims against Merlin. Construing all evidence in the light most favorable to Defendant-Intervenor, the non-moving party, the Court concludes that Levinsky's counterclaim for breach of

---

[4] Corporations are distinct legal entities and have identities separate from their principals which cannot be disregarded.  Port Chester Elec. Constr. Co. v. Atlas, 40 N.Y.2d 652, 656 (N.Y. 1976).  In his testimony, Levinsky even acknowledged the existence of a corporate veil between Merlin and himself:

> Q. Does Merlin insulate you from personal liability in your commercial real estate dealings?
> A. Absolutely.

Sabo Aff., Ex. F at 79-80.

the implied-in-fact covenant should be dismissed and summary judgment is granted in favor of Plaintiff.

### 2. Covenant of Good Faith and Fair Dealing

Lotz also seeks summary judgment on Levinsky's claim that Lotz breached the implied covenant of good faith and fair dealing. Answer and Counterclaim of Defendant-Intervenor ¶ 45. Under New York law, a covenant of good faith and fair dealing in the course of contract performance is implicit in all contracts. Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (N.Y. 1995); See Van Valkenburgh, Nooger & Neville v. Hayden Publ'g. Co., 30 N.Y.2d 34 (N.Y. 1972), 45, cert. denied 409 U.S. 875 (1972); see also Maalouf v. Salomen Smith Barney, Inc., No. 02 Civ. 4770, 2004 WL 2008848, at *4 (S.D.N.Y. Sept. 8, 2004). However "breach of that duty is merely a breach of the underlying contract." Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992) (quoting Geler v. Nat'l Westminster Bank U.S.A., 770 F. Supp. 210, 215 (S.D.N.Y. 1991)); Harris v. Provident Life and Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002) (stating that New York law does not recognize a separate cause of action for breach of the covenant of good faith and fair dealing when a party brings a breach of contract claim based on identical facts).

Levinsky's allegation that Lotz breached the implied covenant of good faith and fair dealing is based on the same conduct as his allegations for breach of the Accord. Because the Court has disposed of Levinsky's alternative theories for breach of the Accord, this theory must also fail as a matter of law. See Fasolino Foods Co., 961 F.2d at 1055-56. Levinsky's claim for breach of the implied covenant of good faith and fair dealing is entirely duplicative of his breach of the implied-

in-fact covenant claim. Accordingly, summary judgment is granted with respect to Levinsky's counterclaim for breach of the Accord's covenant of good faith and fair dealing.

### C.   Levinsky's Counterclaim for Unjust Enrichment[5]

The theory of unjust enrichment is a quasi-contract claim which creates a cause of action in the absence of an agreement. Goldman v. Metropolitan Life Ins. Co., 5 N.Y.3d 561, 572 (N.Y. 2005). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." AngioDynamics, Inc. v. Biolitec, Inc., 606 F. Supp. 2d 300, 306 (N.D.N.Y. 2009) (quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (N.Y. 1987)). Under New York law, in order to prevail on an unjust enrichment claim, a plaintiff must establish (1) that the other party was enriched, (2) that the enrichment was at the expense of the plaintiff; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff. See Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001).

In the case at bar, Levinsky contends that Lotz would be unjustly enriched if she were to succeed on her claims in this action after having accepted the benefits of the Accord. Answer and Counterclaim of Defendant-Intervenor ¶ 37. This claim is without merit. First, both parties agree that they entered into an agreement on May 19, 2005. Sabo Affirmation, Ex. I; Answer and Counterclaim of Defendant-Intervenor ¶ 16. The existence of a contract is undisputed, thus Levinsky cannot bring a cause of action in quasi-contract. Clark-Fitzpatrick, Inc., 70 N.Y.2d at 388. Second, Levinsky's unjust enrichment claim must fail as a matter of law, because if Lotz were to

---

[5] This section of the Discussion addresses Intervenor's third counterclaim. Answer and Counterclaim of Defendant-Intervenor ¶¶ 36-38.

prevail in her case against Merlin, the alleged unjust enrichment would be at the expense of Merlin, not Levinsky. Because Levinsky has failed to sustain his burden of establishing a *prima facie* case, and a valid contract exists, summary judgment in favor of Lotz on the unjust enrichment claim is proper.

## IV. CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiff's Motion for summary judgment (Dkt. No. 30) is **GRANTED** with respect to Defendant and Intervenor's counterclaims, and the sole issue remaining for trial is whether Defendant breached the Consulting Agreement; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:   July 14, 2009
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge